# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AMADITA HERNANDEZ,

    Plaintiff,

v.

KILOLO KIJAKAZI[1],
Acting Commissioner of Social Security,

    Defendant.

_____/

Case No. 1:20-cv-01565-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.  INTRODUCTION

On November 5, 2020, Plaintiff Amadita Hernandez ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

///

///

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 10, 11.)

## II.     BACKGROUND

On September 16, 2018, Plaintiff protectively filed an application for DIB payments, alleging she became disabled on December 13, 2016, due to fibromyalgia, chronic fatigue, chronic pain, depression, severe anxiety, severe insomnia, and severe migraines. (Administrative Record ("AR") 22, 239, 257.) Plaintiff was born on August 26, 1971, and was 45 years old as of the alleged onset date. (AR 31, 253.) Plaintiff obtained a GED in 1993, has past work experience as a medical assistant. (AR 258.)

### A.     Relevant Medical Evidence[3]

#### 1.     Family First Medical Care

On June 28, 2017, Plaintiff presented for knee pain. (AR 602.) Plaintiff reported that her medication was helping, and without it, she felt she was very violent. (*Id.*) Treatment notes from October 2017 through late February 2018 reflect that Plaintiff reported "sustained partial remission" of her depressive symptoms. (AR 453, 479, 498, 506, 513, 538, 555.) Mental status examinations from December 2016 through April 2019 showed that Plaintiff was alert, cooperative, and oriented, with appropriate mood and normal insight, judgment, attention span, and concentration. (*See* AR 362, 398, 418, 470, 488, 522, 547, 576, 607, 631, 639, 645, 651, 655, 660, 736, 866, 885, 895, 920.)

On January 5, 2018, Plaintiff presented for counseling. (AR 491.) Plaintiff stated that she had partial improvement with her depressed mood and anhedonia. (AR 498.)

On September 8, 2018, Plaintiff had a follow-up counseling appointment. (AR 371.) She reported some improvement with coping and an increase in motivation in trying to engage in household activities. (AR 371.)

On June 4, 2019, Plaintiff reported an improvement in her mood concurrent with improvement in pain after receiving pain medication. (AR 827.)

#### 2.     Elizabeth Zdradzinski, Psy.D.

On October 31, 2018, Dr. Zdradzinski, one of Plaintiff's medical providers, submitted a psychiatric medical source statement on Plaintiff's behalf. (AR 675.) Dr. Zdradzinski diagnosed

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

Plaintiff with severe chronic major depression. (*Id.*) Dr. Zdradzinski assessed Plaintiff's mental residual functional capacity ("RFC"), opining that Plaintiff had: mild limitations on her ability to deal with the public; mild to moderate limitations on her ability to maintain concentration and attention and to understand, remember, and carry out an extensive variety of technical and/or complex job instructions; and marked to extreme limitations on her ability to withstand the stress and pressures associated with an eight-hour workday and day-to-day work activity. (*Id.*) Dr. Zdradzinski further opined Plaintiff would likely miss up to four days of a five-day workweek. (*Id.*)

### B. Plaintiff's Statement

On October 4, 2018, Plaintiff submitted an adult function report. (AR 263–71.) Plaintiff stated that she is unable to work due to her constant body pain and depression. (AR 263.) With regard to her daily activities, Plaintiff indicated that she feeds and walks her dog when she can; she is able to dress herself, prepare simple meals, use the toilet, do some household chores, drive for a short distance, go grocery shopping, and handle her finances. (AR 264–66.) Plaintiff enjoys reading books and watching movies; she also goes out to dinner and movies with others. (AR 267.) Plaintiff indicated that she does not handle stress well, but can handle changes in routine. (*Id.*)

### C. Administrative Proceedings

The Commissioner initially denied Plaintiff's application for DIB benefits on November 1, 2018, and again on reconsideration on February 13, 2019. (AR 166, 175.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 181.) At the hearing on January 14, 2020, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 41–54.)

Plaintiff lives in an apartment with her daughter. (AR 41–42.) She worked as medical assistant from 2006 to 2016. (AR 42.) Plaintiff testified that she feels unable to work due to her "emotional status"; she is depressed. (AR 42.) She sees a counselor twice a month and takes antidepressants. (AR 44.) Plaintiff also experiences constant, chronic pain all over her body. (AR 43.) According to Plaintiff, she cannot concentrate and is unable to remember things. (AR 49.) She spends about six hours a day lying down. (AR 50.) She takes pain medications, but they do not get rid of the pain entirely. (AR 43.) Acupuncture helped her pain, but she longer does it due

to lack of insurance. (AR 47–48.) Plaintiff does not have any other treatment. (AR 48.)

Plaintiff testified that she is able to complete chores at home, including laundry, cooking, and cleaning, with breaks in between. (AR 45–46.) For example, she can sweep the apartment, which is small, and if her pain is "not bad," she can continue with mopping. (AR 46.) If the pain is not manageable, Plaintiff will sit down for about 30 minutes after she is done sweeping. (AR 46.) After resting, she is able to get up and mop the floor. (AR 46.) Plaintiff has "better days" about once a week. (AR 48.) According to Plaintiff, she is unable to go grocery shopping alone because she loses her balance due to fibromyalgia. (AR 46.) She testified that she always has to hold onto the shopping cart. (AR 46.) With the assistance of the shopping cart, Plaintiff can go around the store and get everything she needs. (AR 46.)

Plaintiff described her typical day as follows: she wakes up, takes medication, goes to restroom to wash her face and brush her teeth, puts her jacket and shoes on, takes her dog for a 10-minute walk, and proceeds with whatever appointments or tasks she has for the day. (AR 47.) Plaintiff is able to drive; she does not do any exercises besides walking her dog, whom she takes out every two to three hours for about ten to fifteen minutes. (AR 47.)

### D. The ALJ's Decision

In a decision dated February 3, 2020, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 22–33.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 24–33.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 13, 2016, the alleged onset date (step one). (AR 24.) At step two, the ALJ found Plaintiff's following impairments to be severe: chronic fatigue syndrome and major depressive disorder. (*Id.*) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 25.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff

had the RFC

> to perform light work as defined in 20 CFR [§] 404.1567(b) with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for six hours in an eight-hour workday and she can sit for six hours in an eight-hour workday. [Plaintiff] can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs ladders, ropes, or scaffolds. She can reach overhead with the non-dominant left upper extremity occasionally. [Plaintiff] can perform noncomplex and routine tasks in low stress environment with few workplace changes and only occasional decisionmaking.

(AR 27.)[4] Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 28.)

The ALJ determined that, given her RFC, Plaintiff was not able to perform her past relevant work as a medical assistant (step four). (AR 31.) The ALJ ultimately concluded that Plaintiff was not disabled because Plaintiff could perform a significant number of other jobs in the national economy, specifically mail sorter (private industry), bench assembler, and swatch clerk (step five). (AR 32.)

On March 9, 2020, Plaintiff sought review of the ALJ's decision before the Appeals Council, which the Appeals Council denied on September 2, 2020. (AR 1, 15.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work

---

[4] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b). Although the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.  Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.  DISCUSSION

Plaintiff contends that the ALJ harmfully erred in discounting both Plaintiff's testimony regarding her subjective complaints and Dr. Zdradzinski's opinion. (Doc. 18 at 6–16.) For the reasons set forth below, the Court determines that the ALJ did not err.

### A.  The ALJ Properly Evaluated Plaintiff's Testimony

#### 1.  Legal Standard

In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General

findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834)).

**2. Analysis**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (AR 28.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) Since the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591. Here, the ALJ found that Plaintiff's credibility was undermined by her improvement with treatment and the objective medical evidence of record. (AR 26, 28, 29.) The Court takes each finding in turn.

**a. Plaintiff's Improvement with Treatment**

The ALJ found that Plaintiff's subjective symptom testimony is inconsistent with the medical evidence, including records showing improvement with treatment. (AR 28, 29.) In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when their symptoms can be controlled by treatment and/or medication. *See* 20 C.F.R. § 416.929(c)(3)(iv)–(v); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for [disability] benefits.").

It is well settled in the Ninth Circuit that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 795 F.3d at 1017. Here, the ALJ did not discredit Plaintiff merely due to waxing and waning symptoms. There is substantial

evidence in the record that Plaintiff's mental condition had improved with medications and treatment during the relevant period. For example, in June 2017, Plaintiff reported feeling very emotional, with mood swings, but stated her medication was helping. (AR 602.) From October 2017 through late February 2018, Plaintiff reported "sustained partial remission" of her depressive symptoms. (AR 453, 479, 498, 506, 513, 538, 555.) Treatment notes also recorded partial improvement in Plaintiff's depressed mood and anhedonia in January 2018. (AR 498.) In September 2018, Plaintiff reported some improvement with coping and an increase in motivation to engage in her activities of daily living. (AR 371.) In June 2019, Plaintiff had an improvement in mood concurrent with improvement with her pain after she received pain medication. (AR 827.) Plaintiff's consistently normal mental status examinations during this time period, as cited by the ALJ (*see* AR 28), further demonstrate improvement. (*See* AR 362, 398, 418, 470, 488, 522, 547, 576, 607.)

As there is substantial evidence of Plaintiff's improvement with treatment, such is a clear and convincing reason for not finding Plaintiff's subjective complaints fully credible. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (the ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment).

### b. Objective Evidence of Record

The ALJ's second ground for discounting Plaintiff's credibility is that her allegations of significant limitations are inconsistent with Plaintiff's medical evidence of record "that document[s] rather mild findings." (AR 28–29.) Although the Commissioner asserts the ALJ properly discredited Plaintiff on this basis (*see* Doc. 20 at 6–7), Plaintiff contends that the ALJ was not sufficiently specific in the articulation of this reason to permissibly discredit Plaintiff's testimony (*see* Doc. 18 at 7). The Court agrees with Plaintiff.

Here, the record contains evidence of repeatedly normal examinations and mental status findings, as described above. Yet the ALJ failed to specify what parts of this medical evidence undermined Plaintiff's subjective symptom testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487,

493 (9th Cir. 2015). Under *Brown-Hunter*, the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility. 806 F.3d at 494. Instead, the ALJ must link the medical evidence at issue to the Plaintiff's testimony. *Id*. Here, although the ALJ did not do so, this error is harmless. Inconsistency with the medical record was not the sole reason for which the ALJ discredited Plaintiff's testimony. The ALJ articulated one other permissible reason for discounting Plaintiff's credibility, namely, Plaintiff's improvement with treatment, as set forth above. Thus, the ALJ's lack of linkage is not harmful error. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson*, 359 F. 3d at 1197); *Tonapetyan v. Halter*, 242 F. 3d 1144, 1148 (9th Cir. 2001).

In sum, the Court finds that the ALJ offered a clear and convincing reason to discredit Plaintiff's testimony regarding the extent of her limitations. While Plaintiff may disagree with the ALJ's interpretation of the medical evidence (*see* Doc. 18 at 8, 11–12), it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

**B.     The ALJ Properly Evaluated Dr. Zdradzinski's Opinion**

**1.     Legal Standard**

As an initial matter, the Court notes that the "specific and legitimate" reasons standard under which Plaintiff asserts her claim that the ALJ erred in her evaluation of Dr. Zdradzinski's opinion, (Doc. 18 at 12–13), does not apply in this case. As Plaintiff's claim for benefits was filed on September 16, 2018 (*see* AR 22), it is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), § 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

The Ninth Circuit recently issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id.* § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.' " *Id.* at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id.* § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.' " *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id.* § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors.

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent

with the record . . . but are not exactly the same.' " *Id.* (quoting § 404.1520c(b)(3)). *See also id.* § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.' " *Id.* Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. §§ 404.1520c, 416.920c. *See* 20 C.F.R. §§ 404.1520b(c)(3), 415.920b(c)(3).

**2.  Analysis**

In finding Dr. Zdradzinski's opinion unpersuasive, the ALJ explained:

> This opinion is supported by explanation based upon the provider's supportive therapy of [Plaintiff]. The opinion is generally consistent with the overall evidence of record such as [Plaintiff's] mental status examination findings that [Plaintiff] was alert, cooperative, and oriented with appropriate mood, normal insight, normal judgment, normal attention span, and normal concentration. However, the provider's opinion of marked to extreme limitations in withstanding stress and missing four days of a workweek are out-of-proportion and not consistent with the overall evidence. For example, [Plaintiff's] generally unremarkable mental status examination findings and her ability to perform a plethora of daily activities, including household chores, managing finances, and going shopping or to movies. As such I do not find this opinion persuasive.

(AR 30.)

The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Zdradzinski's opinion. As to supportability, the ALJ properly considered that Dr. Zdradzinski's opinion was supported by her own observations in the course of providing therapy to Plaintiff. *See* 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3) (relationship with the claimant is a factor in evaluating the persuasiveness of an opinion, including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination).

As to consistency, the ALJ found Dr. Zdradzinski's opinion that Plaintiff had marked to extreme limitations in her ability to withstand stress was generally inconsistent with the other medical evidence, including generally unremarkable mental status examinations in the record. As cited by the ALJ, mental status examinations from December 2016 through April 2019 showed that Plaintiff was alert, cooperative, and oriented, with appropriate mood and normal insight, judgment, attention span, and concentration. (*See* AR 362, 398, 418, 470, 488, 522, 547, 576, 607, 631, 639,

645, 651, 655, 660, 736, 866, 885, 895, 920.) The ALJ also observed that Dr. Zdradzinski's opinion was inconsistent with Plaintiff's "plethora of daily activities." (AR 30.) Specifically, Plaintiff stated that she was able to feed and walk her dog, prepare simple meals, perform most activities of self-care, drive a car, go grocery shopping, manage her finances, and go out to dinner and movies. (AR 265–67.) She also tries to go outside at least once a day. (AR 266.) Plaintiff further indicated that she could handle changes in routine well. (AR 269.) The Court finds that these activities, and Plaintiff's overall level of activity, were reasonably considered by the ALJ to be inconsistent with Dr. Zdradzinski's opinion that Plaintiff had marked to extreme limitations in withstanding stress.

Based on the foregoing objective medical evidence and nonmedical evidence, the ALJ's finding that Dr. Zdradzinski's opinion was inconsistent with the longitudinal record as a whole is legally sufficient and supported by substantial evidence. It was therefore reasonable for the ALJ to conclude that the record did not support the severity of Dr. Zdradzinski's opined restrictions, including that Plaintiff would miss four days out of the workweek (AR 675.). *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Amadita Hernandez.

IT IS SO ORDERED.

Dated:   **September 19, 2022**              /s/ *Sheila K. Oberto*
                                           UNITED STATES MAGISTRATE JUDGE